**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 96-30553
_____


ST. PAUL INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

AMERICAN FIDELITY INSURANCE COMPANY, et al.,

Defendants,

AMERICAN FIDELITY INSURANCE COMPANY, et al.,

Defendants-Appellants,

VERSUS

FIDELITY AND CASUALTY COMPANY OF NEW YORK
and
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

Defendants-Appellees.

and

FIDELITY AND CASUALTY COMPANY OF NEW YORK,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-3074-F)
_____

December 17, 1996
Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.


1

JERRY E. SMITH, Circuit Judge:[*]

American Fidelity Insurance Company ("American Fidelity") appeals a summary judgment in favor of Fidelity and Casualty Company of New York ("F & C") and St. Paul Insurance Company ("St. Paul") on various insurance coverage claims arising out of an automobile accident. Finding no error, we affirm.

I.

Ronald Lorraine was killed and Ernest LoBouef, Luiz Howard, and Joseph Aucoin injured in a single-car accident. The four men, all crew members of a tug owned by Nolty J. Theriot, Inc. ("Theriot"), were traveling in a vehicle also owned by Theriot, en route to the tug. Theriot was the insured under a primary protection and indemnity policy (the "P&I Policy") underwritten primarily by American Fidelity, a business automobile liability insurance policy underwritten by F & C, and an umbrella policy underwritten by St. Paul.

Lorraine's survivor and the other three victims filed claims against Theriot. The settlements of the claims exhausted the $2 million coverage limitation of the P&I Policy, forcing St. Paul to contribute an additional $800,000 from its umbrella policy. As

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a result, St. Paul filed a declaratory action against both American Fidelity and F & C to determine the nature and extent of coverage under Theriot's various policies. American Fidelity filed a counterclaim against St. Paul and a cross-claim against F & C, seeking contribution for its settlement payments to the claimants.

The district court granted summary judgment in favor of F & C, finding that it was exempted from liability by the "course and scope of employment" coverage exclusion. In addition, the court granted St. Paul's summary judgment motion, concluding that, because the men were in the course of employment at the time of the accident, the P&I Policy provided coverage.[1]

## II.

We review a grant of summary judgment *de novo*. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

## A.

---

[1] A third summary judgment awarded to the maritime employer's liability insurers has not been appealed.

3

American Fidelity first argues that the district court erred in concluding that, under Louisiana law, the four men were in the course and scope of employment at the time of the accident.[2] As a preliminary matter, we reject American Fidelity's contention that federal maritime law, rather than Louisiana insurance law, applies. In the absence of a specific and controlling federal rule, we interpret maritime insurance contracts under the appropriate state law. *See Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir.), *cert. denied*, 502 U.S. 901 (1991). Whether a specific federal rule controls depends upon whether (1) the federal maritime rule constitutes "entrenched federal precedent"; (2) the state has a substantial and legitimate interest in the application of its laws; and (3) the state's rule is materially different from the federal maritime rule. *See id.* (citations omitted). These factors are merely instructive and not dispositive. *See id.*

Where, as here, the policy was issued to a Louisiana insured, the accident occurred in Louisiana, and all of the injured seaman were employed in Louisiana, Louisiana's interest in the instant case is substantial. Furthermore, American Fidelity has not identified any "entrenched federal precedent" regarding construction of the scope of employment for purposes of interpreting automobile insurance contracts under maritime law, nor are we

---

[2] The parties agree that, because the automobile insurance policy expressly excludes bodily injury to a fellow employee arising out of and in the course of his employment, whether the men were in the course and scope of employment is dispositive of this issue.

convinced that any such maritime jurisprudence is materially different from Louisiana law.[3] As such, we agree with the district court that Louisiana law is apposite to the insurance contract.

Under Louisiana law, accidents that occur while an employee is traveling to and from work generally are not considered to have occurred during the course of employment. *See Michaleski v. Western Preferred Casualty Co.*, 472 So. 2d 18, 20 (La. 1985). Where, however, the transportation is furnished as "an incident of employment, either through a vehicle, a conveyance and driver, or payment of expenses," the transportation may be considered within the course of employment. *See id.* Other exceptions to the general rule include, among other things, where the employee was deemed to have been on a specific mission for his employer, such as making a trip in the interest of the employer's business or pursuant to the employer's order, or where the employee was traveling from one work site to the next. *See Tarver v. Energy Drilling Co.*, 645 So. 2d 796, 798-99 (La. App. 2d Cir. 1994).

It is uncontested that Theriot provided transportation free of charge for its employees from its administrative offices to the port of departure and back, which benefit was noted on written employment contracts and on the written employee rules and

---

[3] In fact, to the extent that maritime law differs from Louisiana state law, the former has a more permissive definition of the scope of employment. *See Daughdrill v. Diamond M. Drilling Co.*, 447 F.2d 781, 785 (5th Cir. 1971), *cert. denied*, 405 U.S. 997 (1972).

regulations. Although employees were not required to accept this benefit and did not get paid for the transportation time (nor did employees who elected to drive their own cars get reimbursed accordingly), the benefit was so well utilized that employees who elected not to partake were required so to notify the personnel manager in advance. Furthermore, Theriot received benefit from the trips, often loading the vehicles with supplies and directing the employees to pick up groceries that were required for the impending voyage. In so doing, the company avoided having to send a shore-based port captain to purchase the accouterments.

The men were traveling, as was customary, in a Theriot-owned car from the administrative office to the vessel loading dock. The vehicle was carrying supplies needed for the ship's voyage, and the employees had been instructed to stop by the butcher and grocery store to purchase food for the trip. Under the circumstances, we agree with the district court that the men were in the course of employment at the time of the accident. As such, the automobile insurance policy provision exempting from coverage bodily injury to an employee arising out of and in the course of employment is applicable.

B.

American Fidelity next argues that the district court erred in finding that the automobile accident constitutes a risk covered

under the P&I Policy.  The parties agree that the policy covers all losses for which the insured shall become liable to pay "as owner" of the vessel, but the parties dispute the scope of the definition of "as owner."

Because the parties agree that the "causal operational relation" test enunciated in *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir.), *cert. denied*, 406 U.S. 921 (1971), governs the disposition of this case, we need not resolve the difficult question of whether *Lanasse* applies to vessel owners being sued directly in their capacity as owners, as opposed to as additional insureds on a P&I policy.  Rather, we assume *arguendo* that *Lanasse* is apposite.  *See, e.g., Rashidi v. American President Lines*, 96 F.3d 124, 126 (5th Cir. 1996).  Under *Lanasse*, whether the liability of the owner arises "as owner" depends upon the causal connection between the action that gave rise to the liability and the ownership, operations, maintenance, or use of the vessel.  450 F.2d at 584.

*Lanasse* is distinguishable factually from the instant case. In *Lanasse* we noted that the P&I policy did not cover claims arising from the negligence of Chevron, an additional insured on the vessel owner's policy, because it was Chevron's acting as platform operator or crane operator, rather than as owner, that caused the harm.  *See id.*  "[W]here the injury is done through nonvessel operations, the vessel must be more than the inert locale

**7**

of the injury." *Id.*  In the instant case, although the harm arose out of nonvessel operations—a car accident at least sixty miles away from the vessel—the employees were utilizing transportation provided by Theriot to effect a crew change and to deliver supplies as ordered by Theriot in preparation for the vessel's departure. Hence, Theriot's actions as owner of the vessel—effecting a crew change and delivering supplies necessary for an impending voyage— are functions wholly within the province of a ship owner and had the requisite causal connection to the harms suffered.[4]

Accordingly, the judgment is AFFIRMED.

---

[4] Each of the other cases upon which American Fidelity relies—*Windsor Mt. Joy Mutual Ins. Co. v. Pozzi*, 832 F. Supp. 138 (E.D.Pa. 1993); *American Motorists Ins. Co. v. American Employers' Ins. Co.*, 447 F. Supp. 1314 (W.D. La. 1978), *aff'd on other grounds*, 608 F.2d 624 (5th Cir. 1979); and *Reliance Ins. Co. v. Alan*, 222 Cal. App. 3d 702 (Cal. Ct. App. 1990)—is factually distinct.  In *American Motorists*, 447 F. Supp. at 1319, and *Reliance*, 222 Cal. App. 3d at 708, the respective courts noted that harms resulting from a shooting, where the only relationship between the shooting and the vessel was the mere fortuity that the shooting occurred on or near the vessel, were not causally related to the operation, maintenance, ownership, or use of the vessel.  Similarly, the *Windsor* court held that harms resulting from an argument between two ship owners over the use of a spigot hose lacked the requisite connection required under *Lanasse*. 832 F. Supp. at 141-42.  The connection in the instant case between the harms suffered and the operation, maintenance, ownership, and use of the vessel is simply more direct.